IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| Plaintiff, | : |
| vs. | : NO.: 24-cr-207-001(TJS) |
| OLIVER TEJADA | |
| Defendants. | : |

**DEFENDANT, OLIVER TEJADA'S SENTENCING MEMORANDUM**

**AND NOW**, comes Defendant, Oliver Tejada Sentencing Memorandum, and in support of same, defendant submits as follows: Defendant, Oliver Tejada, by and through his counsel, Jonathan J. Sobel, Esquire, hereby moving this Honorable Court to consider the enclosed arguments contained herein in support of Defendant, Oliver Tejada.

The Final Presentence Report drafted by United States Probation Officer, Carolyn M. DeMayo, dated June 2, 2025, sets Oliver Tejada Guidelines sentencing range at 51 months to 63 months, plus an additional twenty-four (24) months, for a total of 75 months to 87 months. *See* PSR ¶ 145. Such a sentence is greater than necessary to achieve the purposes of sentencing in this case.

As set forth in detail below, a consideration of the sentencing factors enumerated in 18 U.S.C. § 3553(a), weigh in favor of a sentence below this recommended guideline. Specifically, the nature of this offense, Oliver's

1

background and the friendships and familial relationships and Mr. Tejada employment history encourage a below guideline sentence pursuant to *United States v. Booker*, 543 U.S. 220 (2005) and its progeny and 18 U.S.C. § 3553(a).

## I. PROCEDURAL BACKGROUND

On May 22, 2024, Defendant, Oliver Tejada was charged, in a seven-count Indictment with Conspiracy to Commit Bank Fraud in violation of 18 U.S.C. § 371[1] and § 1344[2], Bank Fraud and Aiding and Abetting, in violation of 18 U.S.C. ¶ § 1344 and § 2, and five (5) counts of Identity Theft and Aiding and Abetting, in violation of 18 U.S.C. § 1028(A)(1), (c)5) and 2.[3]  There is a co-defendant identified as Christian Collado; the status of Mr. Collado's case is presently unknown to defendant other than Mr. Collado may be in a hospital in New York.

---

[1] 18 U.S.C. § 371 states: "[i]f two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both."

[2] 18 U.S.C. § 1344 states: "[w]hoever knowingly executes, or attempts to execute, a scheme or artifice— (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

[3] 18 U.S.C. § 1028A(a)(1) provides:  [w]hoever, during and in relation to any [provision contained in chapter 63 (relating to mail, bank, and wire fraud)] knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

Defendant was arrested on June 17, 2024 and has been on pretrial supervision (electronic monitoring with home detention restrictions) for what will be one (1) year to the date of the sentencing.

On March 4, 2025, Defendant pled guilty before the Honorable Timothy Savage, United States District Judge to Counts I, I & III of the Indictment. Important to the plea agreement, Defendant agreed to make restitution in the amount of $780,837.11. Defendant is also subject to a special assessment of $300.00. Defendant also agreed to forfeit the stated sum of $780,837.11.

Defendant's sentence is presently scheduled for June 17, 2025, at 10:30 a.m., before this Honorable Court.

## II.   CIRCUMSTANCES OF THE OFFENSE

According to the Indictment, defendant along with Collado and other stole money from approximately 23 identified victims' bank accounts which resulted in a loss amount of $780,837.11. Defendant obtained personal information for the victims and obtained false identification cards with photographs of imposters, which included the real information for the victims. Defendant would drive the imposters to the banks where they would make withdrawals or have wire transfers placed into from the victims accounts into the account of another individual specifically retained by Tejada. The accounts receiving the wires would be emptied. The scheme(s) mostly included Defendant traveling from New York to

primarily the Eastern District of Pennsylvania using his cell phone to access information. Many times, the images were found on his cell phone(s).

The following is a grid of the individuals and information relative to same:

| Victim | Institution | Actual Loss | Date |
|---|---|---|---|
| M.N. / T.N. | TD Bank | $68,929.92 | 09/16/2022 |
| B.K / A.K. | TD Bank | $95,007.87 | 10/03/2022 |
| M.S. / Me.S. | TD Bank | $32,202.00 | 10/21/2022 |
| P.R. | M&T Bank | $0 | 11/12/2022 |
| B.B. / L.B. | Citizens | $40,542.49 | 12/02/2022 |
| C.T. | TD Bank | $82,501.42 | 12/05/2022 |
| W.I. | TD Bank | $170,985.95 | 12/19/2022 |
| M.G. | TD Bank | $3,000.00 | 01/08/2023 |
| G. | Santander | $27,927.00 | 01/09/2023 |
| T.U. | TD Bank | $12,224.67 | 01/10/2023 |
| H.R. | TD Bank | $174,041.99 | 01/31/2023 |
| D.O. / C.O. | TD Bank | $113,871.85 | 02/08/2023 |
| D.G. | Citizens | $8,379.00 | 02/13/2023 |
| F.K. | TD Bank | $1,008.92 | 02/14/2023 |
| A.P. / R.P. | TD Bank | $44,809.03 | 03/09/2023 |
| N.G. / R.G. | TD Bank | $62,405.00 | 03/13/2023 |

| | | | |
|---|---|---|---|
| M.P. | TD Bank | $0. | 03/23/2023 |

On March 4, 2023, defendant was stopped for traffic violations in New York City. Upon search of the vehicle, police found cell phones, SIM cards, cash, fake driver's licenses, credit / debit cards, checks and account information.

As noted above, there were individual victims as well as financial institutions, including TD Bank, Citizens Bank and Santander Bank.

### III. LEGAL STANDARD

This Court must follow a three-step process when sentencing a defendant: (1) calculate the defendant's guideline sentence, (2) formally rule on any departure motions and state how any departure affects the defendant's guideline calculation, and (3) exercise discretion by separately considering the relevant factors outlined in 18 U.S.C. § 3553(a) when setting the sentence. *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006).

At the third step of the sentencing process, the Court must consider the advisory guideline range along with all the pertinent § 3553(a) factors in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a

factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted).

## IV. SENTENCING CALCULATION

### A. Statutory Maximum Sentence

According to the PSR, defendant's statutory maximum sentence on Count I of the Indictment is five (5) years. *See* PSR ¶ 143. The maximum term of supervised release is not more than three (3) years. *See* PSR ¶ 147.

Again, according to the PSR, defendant's statutory maximum sentence on Count II of the Indictment is thirty (30) years. *See* PSR ¶ 143. The maximum term of supervised release is not more than five (5) years. *See* PSR ¶ 147.

Lastly, according to the PSR, defendant's statutory maximum sentence on Count III of the Indictment is two (2) years. *See* PSR ¶ 143. The maximum term of supervised release is not more than one (1) year. *See* PSR ¶ 147. On Counts I, II & III, Defendant is ineligible for probation. *See* PSR ¶ 150.

On Counts I & III of the Indictment, there is a statutory maximum fine of $250,000.00. *See* PSR ¶ 152. On Count II, the maximum fine is $1,000,000.00. *Id.* The statute calls for a mandatory special assessment of $100.00 on each count. *See* PSR ¶ 153. Restitution is owed in the amount of $780,837.11. *See* PSR ¶ 157.

B.    **Sentencing Guidelines Calculation**

1.    **Offense Level Computation.**

The Presentence Report calculates defendant, Tejada' advisory guideline range at 75 months to 87 months, which is comprised of 51 months to 63 months on Count I, plus twenty-four (24) months on Count III. *See* PSR ¶ 145. This range is based on an offense level of twenty (24) and a criminal history category of I. *See* PSR at ¶ 145.

According to the Presentence Investigation Report, on Counts I and II which are group together, of the Indictment, the base level offense is seven (7). *See* PSR ¶ 94. There are several specific offense characteristics / adjustments, due to the following:

|   |   |   |   |   |
|---|---|---|---|---|
| a. | Loss Amount ($550,000 - $1,500,000.00) | – | 14 levels; |
| b. | Ten or more victims | - | 2 levels; |
| c. | Role in the offense | - | 4 levels |
|   |   | **TOTAL** | **27 levels** |

*See* PSR at ¶ 95, ¶ 96 & ¶ 98. The adjusted offense level was twenty-seven (27). *See* PSR ¶ 100.

At the time of the plea, defendant received a two (2) level decrease for "acceptance of responsibility for the offense" pursuant to USSG § 3E1.1(a).[4] PSR

---

[4] Pursuant to the Guideline:

at ¶ 102. Defendant also received a one (1) level decrease for timely pleading pursuant to USSG § 3E1.1(b).[5] *See* PSR ¶ 103. This reveals a total offense level of twenty-four (24). *See* PSR ¶ 104.

However, in Count III, because there is a charge of aggravated identity theft there is a two (2) year consecutive term of imprisonment to the sentence imposed above. *See* PSR ¶ 105, ¶ 144, ¶ 145. The guideline range goes from 51 months to 63 months to 75 months to 87 months. *Id.*

With respect to supervised release, pursuant to the guidelines, the guideline range for Count I is one (1) to three (3) years. *See* PSR ¶ 149. On Count II, the range is from two (2) to five (5) years. *Id.* For Count III, the range is one (1) year. *Id.* Defendant is ineligible for probation as it is a Class B Felony and in the Zone D range. *See* PSR ¶ 151.

---

> If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

U.S.S.G. § 3E1.1(a).

[5] Similarly, U.S.S.G. § 3E1.1(b) states:

> If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

The guidelines indicate that a fine could range from $20,000.00 to $1,000,000.00  *See* PSR ¶ 154.  Finally, restitution shall be ordered.  *See* PSR ¶ 158.

### 2. Criminal History Computation

According to defendant's criminal history, on March 31, 2023, defendant was charged with "wandering / prowling to obtain or sell a controlled substance in Woodbridge Township Municipal Court.  On June 18, 2024, he pled guilty and was sentenced to a fine and court costs.  He was assessed one (1) point.  *See* PSR ¶ 108.  The resulting criminal history category is a I.  *See* PSR ¶ 111.

### V. CONSIDERATION OF THE SENTENCING FACTORS

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that the most appropriate sentence is imprisonment even though it is well below the applicable guidelines range.

The Supreme Court has declared: "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013) (quoting *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011) (plurality opinion); ellipsis in

original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 133 S. Ct. at 2084. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.*

In addition, this Court must also consider all of the sentencing considerations set forth in § 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

The relevant § 3553(a) factors will be discussed in turn.

1. **The Nature and Circumstances of the Crimes**

This offense unfortunately involves bank fraud, conspiracy and aggravated identity theft. For a period of approximately six (6) months, i.e., September, 2022 to March, 2023, defendant use other individuals identities, strangers, in various different ways in order to fleece their bank accounts, wire money from those accounts, withdraw money, etc., all without permission and all for purposes of his own financial gain. As noted, Mr. Tejada did not know these individuals he was victimizing but managed to obtain their private information to further his fraud. A lion's share of the fraud was leveled upon TD Bank and other banking institutions.

2. **The History and Characteristics of the Defendant**

Defendant, Oliver Tejada is a twenty-five (25) years of age. He was born in New York City. Defendant has no relationship with his father but a great relationship with his mother. Defendant was raised in the Bronx, New York. He has a sister who is fifteen (15) years of age. He is proud of his childhood and the manner in which his mother raised him. He describes his Uncle as being a great role model for him growing up who provided not only financial assistance but emotional support to the family. Oliver's mother runs a daycare out of the residence. Despite defendant being charged and having pled guilty, his family has been a source of support. He appears to be emotionally torn by what the consequences of his actions have done to his grandmother, mother and his sister.

Defendant, likewise, has a good with his grandmother. Defendant's mother has described him as a "good kid", but she support him and acknowledges that people make mistakes.

Defendant graduated from high school in the Bronx in 2018. He attended community college in New York for two (2) semesters. He wanted to become an accountant. However, he was working and unable to balance both desires.

Defendant does not have much of an employment history other than working for a car rental company and the restaurant known as Sweetgreen.

Defendant has been depressed since being arrested for this incident and has expressed disappointment in himself and in his actions. Defendant looks forward to having this matter completed, serving his sentence and returning to society.

When thinking about why defendant committed these actions against people he did not know and banks he did not have any connection to, it becomes clear that defendant likely never thought about the individual victims and clearly not about the banks and what would be lost. When considering that defendant used, at least some of the money for the *rental* of a Lamborghini, it becomes clear that defendant was clearly seeking to set out to impress others, which evinces a person who is probably suffering internally and not satisfied with things that which one earns with hard work.

### 3. The Need for Sentence Imposed to Reflect Seriousness of Crimes, Promote Respect for Law, and Provide Just Punishment for Crimes

In this case, there is a need for the sentence to promote respect for the law and provide just punishment. Mr. Tejada is now faced with a significant amount of time in a Federal Correctional Facility as a convicted felon. Oliver realizes how the loss of liberty, the inability to maintain contact with his family and the stress of these events has had on his family, as a consequence of his action. Oliver does not seek to justify or minimize his actions. His remorse and recognition of his wrongdoing are evidenced by his acceptance of responsibility.

The Court, however, should recognize that a sentence well below the advisory guideline range would engender respect for the law and provide just punishment. The advisory guideline range, on the bottom is seventy-five months and eighty seven months to the top.

Consequently, a sentence below the advisory range, on Counts I & II would meet these sentencing objectives to reflect the seriousness of the offense, promote respect for the law and provide a just punishment for the offense.

### 4. The Need for Adequate Deterrence and Protection of Public

The need for adequate deterrence of criminal conduct is great. Tejada's prosecution and conviction for this case in the serious venue of federal court, along with the risk of serving a significant prison term, as a twenty-five (25) year old

young man, provides a more than adequate general deterrent to other, similarly situated individuals. Therefore, even a sentence below the advisory Guidelines range would send the same appropriate message to others and deter people from committing similar crimes. Any sentence given by the court would provide both general deterrence to the community looking at Tejada's actions and specific deterrence to Tejada from *ever* considering this course of conduct again.

The sentence given should protect society and deter future criminal conduct, incarceration for a lengthy period of time may not be a way to obtain that goal. The same result can be achieved, through extensive counseling and treatment and an extended period of supervised release, which could substantially limit Tejada's freedoms.

**5.    The Need to Provide the Defendant with Training, Medical Care or Correctional Treatment**

Since the age of 14 or 15, defendant had been smoking marijuana. It had transformed into a "habit". Up to the time of these offenses, he was still smoking marijuana. Likewise, when he has been on pre-trial release, defendant has appeared to be using marijuana. It is suggested by counsel and probation that defendant may benefit from a substance abuse treatment program and vocational training. Also, Defendant expressed an interest in returning to college to "make his mother proud." Defendant would like to obtain a commercial driver's license and

take courses there for computers, business and fitness and potentially start a hauling company.

## 6. Kinds of Sentences Available

The ranges of sentences available to the Court are listed in the Presentence Report at Part "D", and in this Sentencing Memorandum.

## 7. The Sentencing Range Established by the Sentencing Commission.

As noted above, pursuant to the advisory guidelines, the advisory guideline range is arguably anywhere, on Counts I & II from 51 months to 63 months in custody. *Id.* at 145. However, there is a 24 month mandatory consecutive sentence to any sentence imposed under the foregoing guidelines. With this in mind, Tejada must serve twenty-four (24) months. The issue is what, over and above those 24 months is sufficient to mete out justice, *but* not greater than necessary to accomplish those goals. If, for instance, defendant was not subject to the mandatory sentence, his guideline range is a tad over four years on the bottom and a tad over five years on the top. This Honorable Court could give defendant anywhere from one (1) day on top of the mandatory sentence to twenty-seven months to meet the bottom of the Count I & II guideline or as high as thirty-nine months on top of the mandatory sentence to meet the top of the Count I & II guideline. Finally, the Court could simply impose the consecutive Count III sentence along with the guidelines under Count I & II, i.e., seventy-five to eighty-

seven months. The question is what is sufficient but not greater than necessary. Defendant submits the former, rather than the latter, with consideration in between.

**8.     The Need to Provide Restitution to Any Victims of the Offense.**

As noted above, Defendant agreed to make restitution in the amount of $780,837.11. *See* PSR ¶ 7(b) & 157.

**9.     The Need to Avoid Unwarranted Sentence Disparities Among Similarly Situated Defendants**

A below guideline sentence in this case will result in uniformity and fairness among other similarly situated defendants.

Reference to the sentencing guidelines, while carefully considering the 3553(a) factors particularly relevant to an individual defendant, is the best available means of preventing the disfavored result of basing sentences on the luck of the draw in judicial assignments. Here such reference is still necessary and important, however, considering all of the circumstances surrounding this particular defendant, the recommended below-guideline sentence is the appropriate resolution of this case.

## VI. <u>CONCLUSION</u>

Therefore, it is specifically requested this Honorable Court impose a sentence that is sufficient in meeting out justice, however, a sentence that is not greater than necessary to mete out said justice. Defendant, Oliver Tejada respectfully requests this Honorable Court impose a sentence below the advisory guideline range of seventy-five to eighty-seven months. *Id.* at 145. Defendant would respectfully request the Court recommend to the Bureau of Prisons that he be designated to a facility close to New York, so that Mr. Tejada can be close to his family.

        Respectfully submitted,

        s/JONATHAN J. SOBEL, ESQUIRE
        I.D. #: 76428
        1500 Walnut Street, Suite 900
        Philadelphia, PA 19102
        (215) 735-7535
        (215) 735-7539
        Mate89@aol.com

        Attorney for Defendant, Oliver Tejada

Date: June 10, 2025

<b><u>IN THE UNITED STATES DISTRICT COURT<br>FOR THE EASTERN DISTRICT OF PENNSYLVANIA</u></b>

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| v. | :No.: 24-207 |
| **OLIVER TEJADA** | : |

<b><u>CERTIFICATE OF SERVICE</u></b>

I, **JONATHAN J. SOBEL, ESQUIRE**, attorney for Defendant hereby certify as follows:

1. I am an attorney at law in the State of New Jersey and attorney for Defendant in the above captioned matter.

2. On the date indicated below, I caused an original of the Sentencing Memorandum along with this Certification of Filing and of Service to be electronically filed with the Clerk, United States District Court for the District of New Jersey.

3. Also, on the date indicated below, I caused a courtesy copy of the aforementioned documents to be served on:

> ROBERT LIVERMORE, ASSISTANT DISTRICT ATTORNEY
> via electronic filing, only.

4. I certify that the foregoing statements made by me are true.  I am aware that if any of the statement made by me are willfully false, I am subject to punishment.

<u>s/JONATHAN J. SOBEL, ESQUIRE</u>
I.D. #:  76428
1500 Walnut Street, Suite 900
Philadelphia, PA  19102
(215) 735-7535
(215) 735-7539
<u>Mate89@aol.com</u>

Attorney for Defendant

Date:  June 10, 2025